FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2024

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TAMMY S.,[1]

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,

Defendant.

No. 2:23-cv-00333-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to complex regional pain syndrome of the left leg, a torn meniscus of the left knee with pain, obesity, bi-polar disorder, and depression, Plaintiff Tammy S. claims she is unable to work fulltime and applied for disability insurance benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly assessed Plaintiff's credibility and has not adequately explained why on remand he struck a provision from the RFC that

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Plaintiff was required to elevate her leg at waist level. As is explained below, the ALJ erred in failing to adequately articulate his reasoning for not including the provision. This matter is remanded for further proceedings.

## I. Background

In May 2018, Plaintiff filed an application for benefits under Title 2, claiming disability beginning April 14, 2018, based on the physical and mental impairments noted above.[2]

The agency denied benefits at the initial and reconsideration levels.[3] After the agency denied Plaintiff benefits, ALJ Mark Kim held a telephone hearing in January 2021, at which Plaintiff appeared with her representative.[4] Plaintiff and a vocational expert testified.[5] In February 2021, the ALJ issued a decision denying benefits.[6] Plaintiff appealed the ALJ decision and on March 20, 2022, the Appeals Council remanded the case for further proceedings.[7] On November 2, 2022,

---

[2] AR 303, 333.

[3] AR 187, 195.

[4] AR 48-73.

[5] *Id.*

[6] AR 157-175.

[7] AR 176-182, 265.

Plaintiff appeared with her representative at a hearing before ALJ Kim.[8] Plaintiff and a vocational expert testified.[9]

After the hearing, the ALJ issued a decision denying benefits.[10] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[11] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Noman Stanley, MD, and Alnoor Virji, MD, to be partially persuasive.
- The opinions of independent medical examiners Scott Kitchel, MD, and Lewis Almaraz, MD, to be partially persuasive.
- The opinions of treating source Karl Lambert, MD, to be unpersuasive.[12]

The ALJ also found the third-party statement of Plaintiff's spouse to be unpersuasive.[13]

As to the sequential disability analysis, the ALJ found:

---

[8] AR 74-103.

[9] *Id.*

[10] AR 14-36. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[11] AR 26-29.

[12] AR 28-29.

[13] AR 29.

- Plaintiff met the insured status requirements through September 30, 2018.
- Step one: Plaintiff had not engaged in substantial gainful activity since April 14, 2018, the alleged onset date through her date last insured of September 30, 2018.
- Step two: Plaintiff had the following medically determinable severe impairments: complex regional pain syndrome, history of left knee meniscus tear, and obesity.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform a full range of sedentary work with the following exceptions:

  [Plaintiff] could lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently. She could stand and/or walk for 5 minutes at a time while staying on task. While walking she must be allowed to use an assistive device. She could sit for 1 hour at a time. She could never climb ladders, ropes, or scaffolds, or crouch and crawl. She could less than occasionally, defined as 5% of the workday or less, climb stairs. She could occasionally balance, stoop, and kneel. She needed to avoid extreme cold, excessive vibrations, and unprotected heights.

- Step four: Plaintiff is unable to perform past relevant work of a certified nurse's aid and truck driver, as well as a composite job of a cashier and stores laborer.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a food and beverage order clerk (DOT # 209.567-014), an information clerk (DOT # 237.367-046), and a table worker (DOT # 739.687-182).[14]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[15]

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[16] and such error impacted the nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a

---

[14] AR 20-31.

[15] AR 1-6.

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §§ 405(g), 1383(g).

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

## III. Analysis

Plaintiff seeks relief from the denial of disability on the sole ground that in his decision of February 18, 2021, the ALJ included a provision in the RFC that Plaintiff would work with elevation of one lower limb to waist level for approximately 5 to 10 minutes every hour and that on remand, based upon the same record, the ALJ did not include the same provision. The Commissioner argues that the ALJ reasonably discounted Plaintiff's subjective complaints because they were inconsistent with the level of treatment received, the medical record, and Plaintiff's activities.[19] The Court disagrees with the Commissioner. As is explained below, the ALJ's analysis contains consequential error.

---

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[19] ECF No. 8.

**A. Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues that following the Appeals Council's remand of her case the ALJ improperly assessed Plaintiff's credibility and has not adequately explained why on remand he struck a provision which had been included in the RFC in his prior decision that Plaintiff was required to elevate her leg at waist level.

1. Standard

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[20] This requires the ALJ to "show his [or her] work"

---

[20] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[21]

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[22] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[23] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[24] "The clear and convincing standard is the most demanding required in Social Security cases."[25] Therefore, if an ALJ does not articulate specific, clear,

---

[21] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (alteration added).

[22] *Molina*, 674 F.3d at 1112.

[23] *Ghanim* 763 F.3d at 1163(quoting *Lingenfelter*, 504 F.3d at 1036).

[24] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[25] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[26]

1. Relevant Testimony

*a. Plaintiff's Testimony*

On January 28, 2021, Plaintiff appeared with her attorney to testify before ALJ Kim.[27] The ALJ advised Plaintiff that he sought testimony regarding her condition for the period of April 14, 2018, through September 2018.[28] When asked if she had surgeries in that time period Plaintiff responded that she had four surgeries but did not remember the dates.[29] Plaintiff testified that in that time period she was having issues with her left leg, left foot, and left knee, which had started with her hip and that the pain levels made it hard to get around.[30] She stated that the pain medication caused or worsened mental health issues.[31] She

---

[26] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[27] AR 48.

[28] AR 51.

[29] AR 54.

[30] AR 55.

[31] AR 56.

said that during that time period she was walking on crutches or in a wheelchair and that both had been prescribed.[32] She said that when she left the house she used the crutches or the wheelchair and that her left leg had to be partially elevated and would swell when it was not elevated.[33] She was only able to drive a car for a short distance because her leg would need to be elevated.[34] Plaintiff testified that she sold her motorcycle and her Jeep because she could not use them anymore.[35]

Plaintiff testified that her leg was elevated for up to eight hours while she was in a wheelchair and that if it was put down there would be issues with swelling.[36] She said that she put heat and ice on her left leg as well.[37]

On November 2, 2022, Plaintiff appeared for a second hearing before ALJ Kim.[38] The ALJ stated again that he was looking for information regarding the period between April 14, 2018 and September 2018.[39] Plaintiff testified that

---

[32] AR 56-57.

[33] AR 57-58.

[34] AR 59.

[35] AR 61.

[36] AR 62-63.

[37] AR 63.

[38] AR 74.

[39] AR 79.

during that time her left leg was in a brace, and using crutches, a wheelchair, or a cane to ambulate.[40] She said that standing on her left leg would cause swelling and her left foot would go numb.[41] She used the wheelchair for three weeks after each surgery and then used the crutches or the cane.[42] She was not able to put weight on the leg and could not balance.[43] She testified that she is able to do more now and can sit for a while and sit outside. She said that at that time she needed help showering and doing personal care but is able to do things on her own now.[44] She said she can sit for 10 minutes without shifting and can stand for 5 minutes.[45] In the relevant period, her foot was numb about fifty percent of the time.[46]

Plaintiff testified that she needed to elevate her left leg.[47] She said she put a pillow under the leg and had it above her heart and when it was not elevated it

[40] AR 80.

[41] AR 80-81.

[42] AR 81.

[43] AR 83.

[44] AR 86.

[45] AR 87.

[46] AR 88.

[47] AR 90.

would get swollen.[48] It fluctuated but she had to raise it every couple hours on average.[49]

*b.* *The third-party statement of her husband*

On July 14, 2018, Plaintiff's husband completed a third-party statement.[50] The Court notes that this statement was written three months after the relevant period began and five months before it ended. The husband stated that he has known Plaintiff for 19 years and they live together in a house.[51] When asked how Plaintiff's illness limits her, he responded: "her leg will swell to where she can't move and then she has to lay there with leg above her heart till it subsides."[52]

He stated that Plaintiff lays on the couch; that he had to help her with showering and person care; that once a week Plaintiff would make a sandwich but cannot stand long; that Plaintiff goes out twice a week on average; that her activities are watching TV and playing computer games; that Plaintiff's condition limits her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, and concentrate; that she can walk 10 steps without stopping; that she gets along with others; that on a daily basis she uses a brace, cane, crutches, and

---

[48] *Id.*

[49] *Id.*

[50] AR 356-363

[51] AR 356.

[52] *Id.*

glasses; that she is scared her leg will never be fixed; that her medications make her sleepy; and that she will shop on a good day but will be in pain for the next two days.[53]

2. The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her conditions to be only partially consistent with the evidence[54]

In his first decision, ALJ Kim provided the following formulated RFC:

> through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk 30 minutes at a time for up to two-hours in an eight-hour workday; never crouch, crawl, or climb ladders, ropes, or scaffolds; only occasionally balance, stoop, and kneel; must avoid extreme cold temperatures, excessive vibration, and unprotected heights; is limited to simple, routine, unskilled tasks; and work allowing the elevation of one lower extremity up to waist level for approximately 5 to 10 minutes every hour.[55]

In its May 20, 2022 Order, the Appeals Council remanded the case to the ALJ, noting that the medical opinions limited Plaintiff to sedentary work, but with the ability to change position as needed, but the ALJ did not explain why he found

[53] AR 357-363.

[54] AR 26.

[55] AR 164.

that limitation not warranted.[56] The Appeals Council also found that the ALJ did not contain an adequate evaluation of Plaintiff's need for an assistive device and failed to adequately evaluate the third-party statements of Plaintiff's husband regarding her complex regional pain syndrome.[57]

In his decision dated November 23, 2022, ALJ Kim provided the following formulated RFC:

> through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently. She could stand and/or walk for 5 minutes at a time while staying on task. While walking she must be allowed to use an assistive device. She could sit for 1 hour at a time. She could never climb ladders, ropes, or scaffolds, or crouch and crawl. She could less than occasionally, defined as 5% of the workday or less, climb stairs. She could occasionally balance, stoop, and kneel. She needed to avoid extreme cold, excessive vibrations, and unprotected heights.[58]

The ALJ stated that Plaintiff's testimony was out of proportion and inconsistent with the treatment notes, objective evidence, and other evidence of record.[59] He stated:

> She also testified to rather significant limitations regarding her ability to sit, stand, and walk as well swelling, numbness, and pain in her foot and leg (Testimony). However, despite the periodic abnormalities

---

[56] AR 178-179.

[57] AR 179.

[58] AR 25.

[59] AR 27.

indicated above, upon physical examinations, no swelling, warmth, or erythema was seen in her knee (B3F/6-8; B11F/10-11).[60]

3. Relevant Medical Records

Because the sole issue presented to the Court is whether the ALJ adequately provided in the RFC for the Plaintiff's need to elevate her leg, only relevant documents are summarized.

On August 31, 2017, Plaintiff presented to her orthopedist, Shaun Peterson, MD, with an antalgic gait.[61] Dr. Peterson noted swelling in the left knee, with pain and tenderness along the joint line, as well as crepitus and pain on extension.[62] Dr. Peterson assessed complex tear of the lateral meniscus of the left knee.[63] On September 7, 2017, Plaintiff presented to Dr. Peterson for follow-up and was noted to have contusion of the left knee, tear of the lateral cartilage, CRPS, and bipolar disorder.[64] It was notes that on August 1, 2017, Plaintiff had received a steroid injection which gave 75% relief but the effects had worn off.[65] On examination, there was swelling in the left knee, as well as crepitus, limited range of motion,

---

[60] *Id.*

[61] AR 633.

[62] AR 633-634.

[63] AR 634.

[64] AR 624.

[65] Id.

and pain with hyperextension.[66] On January 31, 2019, Plaintiff returned to Dr. Peterson, reporting that she had lost weight in an effort to gain relief from pain.[67] Dr. Peterson noted that Plaintiff's knee had affected her ability to engage in activities of daily living, driving, and working and had affected her sleep.[68] On examination, Plaintiff had an antalgic gait and there was swelling in the left knee.[69]

On May 9, 2019, Plaintiff presented to Dennis Freirichs, PA, with reports of swelling and soreness in her knee, post-surgery.[70] PA Freirichs noted moderate swelling of the left knee.[71]

On July 31, 2019, Plaintiff presented to Wenatchee Valley Hospital with complaints of left knee pain and swelling.[72] She was seen by Eric Davis, PA, who

---

[66] AR 625.

[67] AR 635.

[68] *Id.*

[69] AR 637, 639.

[70] AR 650.

[71] *Id.*

[72] AR 762.

noted that the knee was "somewhat edematous" and diagnosed effusion of the left knee.[73] PA Davis directed Plaintiff to "continue to elevate and ice the leg.[74]

In later periods of treatment, from September 25, 2019, on, Jared Wagener, MD, and other Wenatchee Pain Relief staff advised Plaintiff to continue to elevate her left leg and put ice on it to make the pain tolerable.[75]

4. Analysis

The Court finds that the ALJ's failure to explain his reasoning adequately for not including the same provision for Plaintiff to elevate her feet in the RFC is problematic for two reasons.

First, the medical records in 2017 and 2018 indicate that Plaintiff experienced issues in her left knee and that as of July 2019, Plaintiff was advised to elevate and ice her leg. Moreover, in the later period, pain management doctors continued to advise Plaintiff to do so. While she was not formally advised to elevate her leg to reduce swelling until July 2019, there is ample evidence that prior to the date last insured Plaintiff experienced pain and swelling in her leg.

The husband's third-party statement is further evidence of Plaintiff's need to elevate her left leg. The statement was written and submitted in July 2018, within the relevant period and has some significance as a contemporaneous document.

---

[73] AR 762, 764.

[74] AR 768.

[75] AR 804, 812, 815, 1038.

When directed by the Appeals Council to consider the husband's statements, the AL did so and found that his statements regarding "[Plaintiff's] degree of variable pain and symptoms" was "somewhat persuasive and supported by treatment records and examination notes."[76]

It was the husband's statement that the primary symptom limiting Plaintiff during the relevant period was that her leg would swell when it was not elevated.[77] It is incongruous that the ALJ would find the husband's statement "somewhat persuasive" overall but reject his primary observation without any explanation.

For these reasons, the ALJ has not adequately explained why he found Plaintiff's assertion that she had to elevate her leg credible at the time he issued his first decision and later found that claim not credible when he issued his subsequent decision. The ALJ's more recent finding was made on the basis of what was a closed record, so it does not stand to reason that later evidence swayed his opinion. Moreover, the witness testimony—the husband's statement—which the ALJ had failed to consider initially further supported Plaintiff's subjective claim and he found that witness testimony persuasive. In light of a medical record and persuasive witness statement that supports Plaintiff's claim that she needed to elevate her leg, the Court finds that the ALJ was obliged to articulate his reasoning for excluding the provision from the RFC.

---

[76] AR 29.

[77] AR 356.

5. Summary

Because the ALJ did not adequately explain his reasons for discounting Plaintiff's symptom reports and did not explain why he discounted the husband's statement regarding Plaintiff's need to elevate her leg when finding his statements "somewhat persuasive" overall, a remand is warranted. To ensure Plaintiff has a fair hearing on remand, the Court finds it prudent to direct that the Social Security Administrative assign this matter to a different ALJ.[78]

**B. Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[79] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[80]

---

[78] *See* 20 C.F.R. § 404.940; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

[79] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## IV. Conclusion

Plaintiff establishes the ALJ erred. On remand, the ALJ is to reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner is to assign a different ALJ to hear this matter on remand.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 7 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 10th day of April, 2024.

Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge